15-2825-cv (L)
*Panzella v. Sposato, et al.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term, 2016

Argued: June 12, 2017

Decided: July 17, 2017      Amended: July 18, 2017

Docket Nos. 15-2825-cv (Lead), 15-2891-cv (XAP)

CHRISTINE PANZELLA,

*Plaintiff-Appellee-Cross-Appellant*

– v. –

MICHAEL J. SPOSATO, Individually and in his Official Capacity, UNKNOWN SHERIFFS #2
THROUGH 4, NASSAU COUNTY, NASSAU COUNTY SHERIFF'S DEPARTMENT,
ROBERT MASTROPIERI, Individually and in his Official Capacity, UNKNOWN SHERIFF,
#1 WITH SHIELD #116,

*Defendants-Appellants-Cross-Appellees**

Before: CALABRESI, POOLER, *Circuit Judges*, VILARDO,* *District Judge*.

This case arose after the County of Nassau, the Nassau County Sheriff's Department, and

various officers (collectively, the "Defendants") refused to return Plaintiff Christine Panzella's

longarms that had been seized in connection with a New York Family Court temporary order of

protection issued against Panzella, even though the order was no longer in effect. Now before us

are an appeal and a cross-appeal from the August 26, 2015 order of the United States District

Court for the Eastern District of New York (Azrack, *J.*). The order granted Panzella an

---

* The Clerk of Court is directed to amend the caption to conform to the listing above.
** Judge Lawrence J. Vilardo of the United States District Court for the Western District of New
York, sitting by designation.

1

injunction that entitles her to a hearing to determine whether the County must return her longarms; it also gave the individual Defendants qualified immunity as to several claims, rejected various other claims by Panzella, and reserved ruling on two of Panzella's state-law claims until after the County affords her the hearing required by the district court's injunction.

For the reasons set forth below, the order of the district court is AFFIRMED to the extent that it grants Panzella an injunction. The appeal is DISMISSED in all other respects.

ROBERT JAMES LA REDDOLA, La Reddola, Lester & Associates, LLP, Garden City, New York, *for Plaintiff-Appellee-Cross-Appellant*

ROBERT F. VAN DER WAAG, Deputy County Attorney, *for* Carnell T. Foskey, Nassau County Attorney, Mineola, New York, *for Defendants-Appellants-Cross-Appellees*

GUIDO CALABRESI, *Circuit Judge:*

This case arose after the County of Nassau, the Nassau County Sheriff's Department, and various officers (collectively, the "Defendants") refused to return Plaintiff Christine Panzella's longarms[1] that had been seized in connection with a New York Family Court temporary order of protection issued against Panzella, even though the order was no longer in effect. Now before us are an appeal and a cross-appeal from the August 26, 2015 order of the United States District Court for the Eastern District of New York (Azrack, *J.*). The order granted Panzella an injunction that entitles her to a hearing to determine whether the County must return her longarms; it also gave the individual Defendants qualified immunity as to several claims, rejected various other claims by Panzella, and reserved ruling on two of Panzella's state-law claims until after the County affords her the hearing required by the district court's injunction.

---

[1] "[R]ifles and shotguns . . . because of the length of their barrels, are referred to collectively as 'longarms.'" *Razzano v. Cty. of Nassau*, 765 F. Supp. 2d 176, 180 (E.D.N.Y. 2011).

2

For the reasons set forth below, the order of the district court is AFFIRMED to the extent that it grants Panzella an injunction. The appeal is DISMISSED in all other respects.

**I.    BACKGROUND**

Because this case involves the interplay between New York Family Court orders of protection and various state and federal laws, we first set forth an overview of the relevant legal framework.

**A. Article 8 of the New York Family Court Act**

Under Article 8 of the New York Family Court Act, an individual may file a petition in the Family Court to obtain an order of protection against a family member. N.Y. Fam. Ct. Act §§ 812, 821–22. The Family Court may then, upon a showing of "good cause[,] . . . issue a temporary order of protection" prohibiting the respondent from engaging in various types of conduct. *Id.* § 828.

The Family Court has on file a general "temporary order of protection" form, which lists conditions the court may impose upon a respondent. The form, reflecting § 842-a of the New York Family Court Act, provides a box the court can check to order the respondent to "[s]urrender any and all [firearms] owned or possessed" by the respondent, and to prohibit the respondent from "obtain[ing] any further . . . firearms." App. at 591. The bottom of the form notifies the respondent that "[i]t is a federal crime to . . . buy, possess or transfer a [firearm] while this Order remains in effect" (hereafter referred to as the "federal warning language"). *Id.* at 592. The federal warning language cites, *inter alia*, 18 U.S.C. § 922(g)(8), which states that it is unlawful for any person to possess firearms if that person:

is subject to a court order that—

3

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.

18 U.S.C. § 922(g)(8).

If the Family Court issues the order *ex parte*, the Court must hold a hearing regarding the surrender within fourteen days of the date the order was issued. N.Y. Fam. Ct. Act § 842-a(7).

"Although Section 842-a authorizes the Family Court to order the confiscation of . . . firearms, this provision does not authorize it to order their subsequent return."[2] *Dudek v. Nassau Cty. Sheriff's Dep't*, 991 F. Supp. 2d 402, 406 (E.D.N.Y. 2013); *accord Engel v. Engel*, 24 A.D.3d 548, 549 (N.Y. App. Div. 2005); *Blauman v. Blauman*, 2 A.D.3d 727, 727–28 (N.Y. App. Div. 2003); *Aloi v. Nassau Cty. Sheriff's Dep't*, 800 N.Y.S.2d 873, 874 (N.Y. Sup. Ct. 2005) ("*Aloi II*"). New York courts have described this as "a legislative glitch." *Aloi II*, 800 N.Y.S.2d at 873 (internal quotation marks omitted). One way to request the return of seized firearms "is to make an application to the officer that currently has custody of the weapons." *Blauman*, 2 A.D.3d at 728. However, because "it can reasonably be anticipated that the officer that has custody of the firearms will refuse to return the firearms without a court order," a

---

[2] There is a procedure for the return of seized handguns in Nassau County, but there is no such procedure for the return of seized longarms. *Razzano*, 765 F. Supp. 2d at 181.

4

respondent's next step would typically be to start an Article 78 proceeding in the New York Supreme Court seeking an order directing the custodian of the firearms to return them. *Aloi II*, 800 N.Y.S.2d at 874.

The burden of deciding whether to return the firearms is thus principally put on the Supreme Court, "which does not have . . . comparable knowledge or background on cases litigated in the Family Court." *Id.* The determination, moreover, is left "to a judge who is not familiar with the history of the family, the parties, and any alleged violence that may have transpired resulting in the issuance of the order of protection and seizure of said firearms." *Id.* at 875. All this, quite apart from the cumbersome nature of Article 78 proceedings. *See Razzano*, 765 F. Supp. 2d at 188–89 (discussing the time and expense of Article 78 proceedings).

**B. Factual Background**

On June 22, 2012, Panzella's ex-husband filed a petition under Article 8 in the New York Family Court. That same day, a Court Attorney Referee in the Family Court issued a temporary order of protection against Panzella ("the Temporary Order"), to remain in effect until December 21, 2012. The Temporary Order was issued *ex parte*, and required that Panzella:

> Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats or any criminal offense against [Panzella's ex-husband].

App. at 50. There is no dispute that a hearing was not held in connection with the issuance of the Temporary Order.

The Temporary Order contained the federal warning language, informing Panzella that, pursuant to 18 U.S.C. § 922(g)(8) and other federal laws, "[i]t is a federal crime to . . . buy,

5

possess or transfer a [firearm] while this Order remains in effect." App. at 51. We note, however, that because the Temporary Order was issued *ex parte*, § 922(g) would not apply to Panzella because § 922(g) makes criminal the possession of a firearm only when an order of protection has been "issued *after a hearing* of which such person received actual notice, and at which such person had an opportunity to participate." 18 U.S.C. § 922(g)(8)(A) (emphasis added). The Family Court also did not include language requiring Panzella to surrender her firearms pursuant to § 842-a, or any other law.

On June 27, 2012, four Deputy Sheriffs from the Nassau County Sheriff's Department, under the supervision of Sheriff Michael Sposato and Deputy Sheriff Robert Mastropieri, served the Temporary Order on Panzella, and, upon learning that she had firearms and longarms in her home, confiscated them.

On November 27, 2012, after a hearing at which Panzella appeared, the Family Court extended the Temporary Order to January 22, 2013. Subsequently, on March 6, 2013, her ex-husband withdrew his petition. The Court, then, dismissed the entire protection proceeding.

On several occasions thereafter, Panzella requested the return of her longarms. Defendants have thus far denied her requests, and have informed her that because her longarms were seized in connection with a lawful order under Article 8 of the New York State Family Court Act, the County's "Retention Policy," App. at 947, prevents it from returning the longarms "until the Sheriff's Department is presented with an order directing the return of [the longarms] from a court of competent jurisdiction." *Id.* at 687.[3]

---

[3] There is no dispute, however, that unlike Panzella's longarms, her pistol license (which was also confiscated along with her longarms), was returned, and that she has since purchased a new pistol. *See* App. at 197–98 (Panzella's affidavit); *id.* at 384–86 (Panzella's pistol purchase record with receipt, dated September 9, 2014). This is because, unlike for longarms, when a person's

The County has explained that it "appl[ies] the § 842-a Retention Policy where, as here, (a) the Family Court Order includes [the federal warning language], but does not explicitly order the respondent to surrender the longarms, *and* (b) the Family Court Order has expired or has been dismissed or vacated." *Id.* at 949. Thus, the County has made clear that its policy is to retain any longarms confiscated in connection with such an order of protection until the County receives a court order directing their return—*even if* (1) the initial order did not explicitly require the confiscation pursuant to § 842-a, *and* (2) the order has expired or has been dismissed.

## C. Procedural History

On October 11, 2013, Panzella filed a "Class Action Complaint"[4] against Defendants, alleging: (1) violation of her Fourteenth Amendment due process rights; (2) violation of her Second Amendment right to bear arms; and (3) a *Monell* claim against the County, Sheriff Sposato, and Deputy Sheriff Mastropieri. She also brought state law claims for replevin and conversion and sought punitive damages and legal fees. Along with her request for damages, Panzella asked the court, *inter alia*, to "[i]ssue temporary, preliminary and permanent injunctions" directing Defendants to conduct post-deprivation hearings pursuant to *Razzano v. County of Nassau*, 765 F. Supp. 2d 176 (E.D.N.Y. 2011), for all longarms "owned by [Panzella] and Class Members that are currently in the possession of Defendant." App. at 37–38.

firearms are confiscated or surrendered, there is, in Nassau County, a procedure for the return of seized handguns. *Razzano*, 765 F. Supp. 2d at 181.

[4] To date, no class has been certified. The district court previously denied, without prejudice, Panzella's motion to certify a class, specifically noting the request could be renewed following the court's decision on the parties' cross-motions for summary judgment, which are the subject of this appeal. *See* Order Denying Motion to Certify Class, *Panzella v. Sposato et al.*, No. 13-cv-05640-JMA-SIL, ECF No. 71; *see also* Special App. at 8 (noting that "[n]o class has been certified yet"). Panzella has not appealed the district court's denial of her motion to certify a class, and, at this time, has not renewed her motion.

On November 27, 2013, Defendants filed a motion to dismiss Panzella's suit pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim. On December 6, 2013, the district court informed the parties that it intended to convert the Defendants' motion to dismiss into a Rule 56 motion for summary judgment. On September 10, 2014, the district court directed Panzella to file a Rule 56 motion for summary judgment, which she did, on January 19, 2015. The district court issued a memorandum and order on Panzella's and the Defendants' motions for summary judgment on August 26, 2015.

The court first dismissed, with prejudice, Panzella's claims against the Nassau County Sheriff's Department, holding that "[a]s an administrative arm of Nassau County, the . . . Department is not a suable entity." *Panzella v. Cty. of Nassau*, No. 13-CV-5640 (JMA)(SIL), 2015 WL 5607750, at \*5 (E.D.N.Y. Aug. 26, 2015).[5]

The court then granted Panzella's motion for summary judgment as to her Fourteenth Amendment due process claim against the County. The court relied on *Razzano*, recognizing that although that case "addressed factually distinct circumstances,"[6] it was nevertheless persuasive when applied to the facts of this case. *Id.* at \*7.

The district court concluded that, after the Temporary Order expired, Panzella should have been afforded a hearing under the following conditions, as set forth in *Razzano*:

> First, the post-deprivation hearing must be held before a neutral decision-maker.
>
> Second . . . , the right to a prompt post-deprivation hearing only applies to seized longarms that are not (1) the fruit of a crime, (2) an instrument of crime, (3) evidence of a crime, (4) contraband, or (5) barred by court order from being possessed by the person from whom they were confiscated.

---

[5] Panzella does not take issue with this conclusion on appeal.

[6] For example, the seizure and retention of the plaintiff's firearms in *Razzano* were pursuant to a department policy rather than in connection with a court order. *Razzano*, 765 F. Supp. 2d at 185.

8

> Third, at the hearing, Nassau County shall have the burden of showing that it is likely to succeed in court on a cause of action . . . to maintain possession of the seized longarms.
>
> Fourth, if the person deprived of longarms prevails at the hearing, the longarms must be returned, barring an order to the contrary from a court to whom that finding is appealed. If, by contrast, Nassau County prevails at the hearing, Nassau County must timely commence a proceeding by which it seeks to maintain possession of the longarms in question.

*Id.*; *accord Razzano*, 765 F. Supp. 2d at 191.

Because no such hearing had been held, the district court granted Panzella's motion for summary judgment and ordered the County to hold a due process hearing, consistent with *Razzano*, within thirty days of the court's decision. *Panzella*, 2015 WL 5607750, at *7.

The district court then granted the individual Defendants qualified immunity, granted the Defendants' motion for summary judgment as to Panzella's Second Amendment claim, denied Panzella's request for punitive damages, and denied both parties' motions for summary judgment on Panzella's state law claims as "premature until the due process hearing ordered by the Court has been held." *Id.* at *12.

## II. DISCUSSION

### A. Appellate Jurisdiction

Defendants argue that we have jurisdiction over this appeal because the district court's order "rejected the defense of immunity for the defendants as to the one claim not dismissed." Appellants-Cross-Appellees' Opening Br. at 1. By using the phrase "the one claim not dismissed," the Defendants appear to refer to Panzella's due process claim on which the district court granted relief. But the district court granted injunctive relief as to this claim, and "[q]ualified immunity shields . . . defendants only from claims for monetary damages and does

9

not bar actions for declaratory or injunctive relief." *Adler v. Pataki*, 185 F.3d 35, 48 (2d Cir. 1999). Because the district court did not deny qualified immunity as to Panzella's damage claims, Defendants' asserted ground for appellate jurisdiction is not present.[7]

Panzella argues that we have jurisdiction to review the district court's order under 28 U.S.C. § 1291 because it was a final order. "A decision is ordinarily considered final and appealable under § 1291 only if it ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Range v. 480–486 Broadway, LLC*, 810 F.3d 108, 112 (2d Cir. 2015) (per curiam) (brackets omitted). In this case, the district court denied both parties' motions for summary judgment on Panzella's state law claims for conversion and replevin, and stated that it would not rule on those claims until the County complied with the injunction to provide Panzella a due process hearing. Because the litigation has not terminated on the merits below, the district court's order was not final, and thus is not appealable under § 1291.

We do, however, have jurisdiction under 28 U.S.C. § 1292 to review the district court's grant of injunctive relief. And there may be an argument that because the injunctive order is appealable under § 1292, we also "have discretion under the doctrine of pendent appellate jurisdiction to review the district court's related order" concerning the other claims in this case. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 482 (2d Cir. 1995). But the doctrine of pendent appellate jurisdiction is applied narrowly—*see Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 117 (2d Cir. 2016)—and only (a) to "matters inextricably bound up with" the issue over which we have jurisdiction, *Lamar Advert. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 371 (2d Cir. 2004) (internal quotation marks

---

[7] To the extent that the Defendants instead refer to Panzella's state-law claims, those claims cannot serve as a basis of jurisdiction. This is because the Defendants did not seek immunity from suit on those claims, and hence cannot seek an interlocutory appeal from the denial of immunity.

omitted), or (b) where "review of [another] decision [is] necessary to ensure meaningful review of the" matter over which the court has jurisdiction, *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51 (1995). None of the other claims in this case meet this standard. We therefore confine our review to the district court's injunctive relief, and dismiss the remainder of this appeal and the individual Defendants' appeal for want of jurisdiction.

## B. Injunctive Relief: Due Process Hearing

"We review the district court's ruling on cross-motions for summary judgment *de novo*, in each case construing the evidence in the light most favorable to the non-moving party." *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Agric.*, 613 F.3d 76, 83 (2d Cir. 2010); *see also Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 103 (2d Cir. 2010) (noting that the scope of review does not change in the context of cross-motions for summary judgment).

The facts relevant to this appeal are largely undisputed. Both parties agree that Defendants confiscated Panzella's longarms, and that the County, through the Sheriff's Department, has a policy of doing so even when an order of protection issued by the Family Court does not explicitly order the Defendants to confiscate firearms pursuant to § 842-a. The parties also agree that Defendants have a policy of retaining confiscated firearms, even after an order of protection expires or is dismissed, until the Sheriff's Department is presented with an order from a court of competent jurisdiction directing the return of the longarms. And all agree that the Family Court believes it cannot issue such an order in circumstances like those before us.

Panzella claims that the County's Retention Policy violates her Fourteenth Amendment due process rights because the County refused to hold a hearing regarding the return of her longarms after the order of protection against her was dismissed. The County, however, argues that the district court erred in requiring it to hold such a hearing. The County further argues that

11

state law leaves it powerless to return firearms after they have been seized pursuant to an order from the Family Court, unless the owner secures a court order requiring their return. As noted above, however, Panzella's firearms were not seized pursuant to the Temporary Order, because the Family Court did not order their confiscation or surrender. Thus, the "legislative glitch" is irrelevant to this case.[8]

The County also claims that Panzella could bring an Article 78 Petition in the New York Supreme Court to obtain an order directing the return of her longarms. This, according to the County, provides adequate process under § 1983.

The Fourteenth Amendment commands that "No State shall . . . deprive any person of . . . property, without due process of law." U.S. Const. amend. XIV, § 1; *accord Nnebe v. Davis*, 644 F.3d 147, 158 (2d. Cir. 2011). "In a § 1983 suit brought to enforce procedural due process rights, a court must determine [A] whether a property interest is implicated, and, if it is, [B] what process is due before the plaintiff may be deprived of that interest." *Nnebe*, 644 F.3d at 158. The appropriate process depends on the balancing of three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of erroneous deprivation of such interest through the procedures used;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976); *accord Rivera-Powell v. Bd. of Elections*, 470 F.3d 458, 466 (2d Cir. 2006).

---

[8] The County also argues that its adherence to New York law regarding the treatment of the firearms did not constitute a "policy" as required for a county to be liable under 42 U.S.C. § 1983 pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See Vives v. N.Y.C.*, 524 F.3d 346, 353–56, 358 (2d Cir. 2008) (holding that city's enforcement of the entire state penal code would not constitute a "city policy" because the city was required to follow state law). Leaving aside the fact that we are here dealing with an injunction and not liability, this argument has no application here, because there was no state law being applied.

As to the first of these "*Mathews* factors," there is no dispute that Panzella has a property interest in her longarms and that the County's retention of her longarms affected that interest.

As to the second factor, although Panzella could initiate an Article 78 proceeding in the New York Supreme Court, such a proceeding would be "likely to take a substantial amount of time." *Razzano*, 765 F. Supp. 2d at 188. Furthermore, Article 78 proceedings place the burden on the person whose property was taken, requiring that person to "give up not only time, but also money to initiate a lawsuit and [usually] retain an attorney." *Id.*; *cf. Alexandre v. Cortes*, 140 F.3d 406, 409 n.5 (2d Cir. 1998) ("It seems to me a shocking thing that our police can seize a citizen's property and then when he seeks to get it back challenge him to prove his title to the satisfaction of a jury." (citation omitted)). In light of the burdens an Article 78 proceeding places on the person whose longarms have been taken, we conclude there is a significant risk of erroneous deprivation of that person's interests in her longarms.[9]

As to the third "*Mathews* factor"—the government's interest in the result and in avoiding undue burdens—the County contends that the Family Court found that Panzella was sufficiently dangerous that a protection order should be entered against her, making it reasonable for the County to assume that it is not appropriate to return her longarms absent a court order. But the supposed danger involved in allowing Panzella to possess any longarms is not properly a factor that counts against her in this case. For the County does not dispute that Panzella could freely

---

[9] Our concern about erroneous deprivation is "primarily temporal," as "there is little concern that in the Article 78 proceeding a plaintiff who is legally entitled to the return of confiscated longarms will *ultimately* be denied a proper remedy." *Razzano*, 765 F. Supp. 2d at 188 (emphasis added). But a lengthy deprivation can be enough to violate the Fourteenth Amendment right to due process. *Cf. Fusari v. Steinberg*, 419 U.S. 379, 389 (1975) ("[T]he possible length of wrongful deprivation . . . is an important factor in assessing the impact of official action on the private interests. . . . the rapidity of . . . review is a significant factor in assessing the sufficiency of the entire process."); *Cty. of Nassau v. Canavan*, 802 N.E.2d 616, 623–24 (N.Y. 2003) (recognizing the potential length of the deprivation in evaluating whether a procedure is adequate).

purchase new longarms given the lack of licensing requirement for such weapons in Nassau County, or that she did, in fact, regain her pistol license and then purchased a new pistol. *See Razzano*, 765 F. Supp. 2d at 189 ("[O]nce a person whose longarms are taken has the opportunity to legally obtain and possess new longarms, the retention of that individual's old longarms does not greatly protect the public from potential harm."). The County cannot, therefore, rely on any safety interest, given that Panzella can buy another longarm, or any other legal firearm for that matter.[10]

Nor has the County provided any evidence that the type of hearing proposed by Panzella—a prompt post-deprivation hearing consistent with the conditions set forth in *Razzano*, *id.* at 191—would be overly burdensome. Indeed, as the district court noted, and as the County has not disputed, the County's police department routinely holds this kind of hearing, given that it is required to do so by the order in *Razzano*, and given the County's more general role in granting pistol licenses. There is no clear reason why the police department could not readily perform the same service in cases such as the one at bar.[11]

We conclude that Panzella's proposed alternative to an Article 78 proceeding—a prompt, post-deprivation hearing consistent with the conditions set forth in *Razzano*, *id.* at 191—would prevent the unjustified deprivation of a person's property interest, and would not be unduly burdensome or costly to the government. Such a hearing would provide Panzella with a timely and inexpensive forum to challenge the County's retention of her longarms and would avoid placing on Panzella the burdens that inhere in an Article 78 proceeding.

---

[10] In any event, the hearing ordered by the district court still gives the County the opportunity to present its safety concerns and have them considered.

[11] To the extent that the County argues that the Sheriff's Department, which seized Panzella's weapons, lacks the expertise of the police department in holding hearings related to weapon possession, the point is irrelevant. The district court ordered its injunction against the County, not the Sheriff's Department.

We therefore hold, consistent with the district court's decision in the instant case, and the decision in *Razzano*, that persons in Panzella's situation are entitled to a prompt post-deprivation hearing under the four conditions set forth by the district court in this case and in *Razzano*. *See Panzella*, 2015 WL 5607750, at *7; *Razzano*, 765 F. Supp. 2d at 191.

**III.    CONCLUSION**

For the reasons set forth above, the order of the district court is hereby AFFIRMED to the extent it grants Panzella an injunction and directs the County to hold a post-deprivation hearing. The appeal is DISMISSED in all other respects.