**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3378
_____

ROBERT J. HARPER,
                                        Appellant

v.

COUNTY OF DELAWARE; BOROUGH OF RIDLEY PARK;
DENISE V. STEWART; DONNA SMITH; MATHEW HYATT;
KENNETH R. CARROLL; JOSHUA POWLEY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-17-cv-04679)
District Judge:  Honorable Mitchell S. Goldberg
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 8, 2019
Before:  CHAGARES, BIBAS, and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: August 12, 2019)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Robert J. Harper appeals from the order of the District Court dismissing his complaint under Fed. R. Civ. P. 12(6). We will affirm.

I.

Harper alleges that, after his father passed away, he lived with and cared for his elderly mother in her home until 2015. In that year, the Delaware County (Pennsylvania) Office of Services for the Aging began investigating Harper's mother's living conditions and care. The Office ultimately petitioned the Delaware County Orphans' Court to adjudicate his mother incompetent and appoint a guardian. After an evidentiary hearing, in which Harper participated while represented by counsel, the Orphans' Court granted that relief. Harper appealed, but the Pennsylvania Superior Court affirmed. See In re Harper, No. 91 EDA 2016, 2017 WL 57150 (Pa. Super. Ct. Jan. 5, 2017). During that process, the Office arranged for Harper's mother's placement in a nursing home. The Office did so with the consent of her other son, whom Harper describes without elaboration as "estranged."

About 10 months later, Harper filed pro se the federal complaint at issue here. He named as defendants Delaware County, the Borough of Ridley Park, and several social workers and other county employees who were involved in the investigation. He raised several kinds of claims, but his principal contention was that the defendants violated his constitutional rights by unlawfully removing his mother from her home. He did not allege that defendants restricted his ability to visit her in the nursing home in any way.

2

On the basis of Harper's allegations, he asserted several causes of action under 42 U.S.C. § 1983 for defendants' alleged violation of his due process and other rights, including claims against the individual defendants and claims against the municipal defendants for municipal liability under Monell v. Department of Social Services, 436 U.S. 658 (1978).  He also asserted a state-law claim for intentional infliction of emotional distress.  Harper sought damages against all defendants and injunctive and declaratory relief[1] against Delaware County.  On defendants' motions to dismiss, the District Court dismissed Harper's federal claims with prejudice under Rule 12(b)(6) and dismissed his state-law claim without prejudice and with leave to amend.  Harper appeals.[2]

## II.

In the District Court, Harper sought both monetary damages and injunctive and declaratory relief.  As Harper has informed us, his mother unfortunately passed away after he filed his complaint.  Thus, Harper's claim for any injunctive or declaratory relief

---

[1] Harper's complaint included a cause of action against Delaware County titled as one for "declaratory relief," but his only specific request was for an injunction prohibiting Delaware County from applying its alleged and allegedly unconstitutional policies regarding the removal of elders from their homes.  (ECF No. 3 at 23-25.)

[2] The District Court's decision is final notwithstanding its dismissal of Harper's state-law claim without prejudice because Harper did not amend within the time permitted and instead stands on his complaint.  See Hoffman v. Nordic Nats., Inc., 837 F.3d 272, 279 & n.49 (3d Cir. 2016).  Thus, we have jurisdiction under 28 U.S.C. § 1291.  Our review is plenary.  See S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248, 256 (3d Cir. 2013).  "To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, when taken as true, state a claim to relief that is plausible on its face." Id. (quotation marks omitted).

that he may have had standing to pursue is moot. That leaves Harper's federal claims for damages against the individual defendants and the municipal defendants. We will affirm the District Court's dismissal of those claims.

## A.    The Individual Defendants

Harper's federal claims turn on his assertion that he had a constitutional right to live with and care for his mother in her home. The District Court concluded that Harper had no such right. We need not decide that issue because, assuming that such a right could exist under some circumstances, the individual defendants are entitled to qualified immunity on the ground that such a right was not clearly established. See Bryan v. United States, 913 F.3d 356, 362 (3d Cir. 2019) ("In considering whether a government official is entitled to qualified immunity, a court can determine whether a constitutional right was violated or in the alternative, whether that right was clearly established.")[3]

Harper claims that the individual defendants violated his rights by removing his mother from her home. In "venturing into the murky area of unenumerated constitutional rights," McCurdy v. Dodd, 352 F.3d 820, 825 (3d Cir. 2003), we must identify the alleged right "carefully and precisely," id. at 826. And for qualified immunity purposes,

---

[3] The individual defendants argued below that they were entitled to qualified immunity. They do not repeat that argument on appeal, but they argue that Harper did not have the right he claims at all, which necessarily would mean that the right was not clearly established. Moreover, even if the individual defendants could be deemed to have forfeited the defense of qualified immunity on appeal, that circumstance does not prevent us from affirming on this alternative and purely legal ground. See TD Bank N.A. v. Hill, — F.3d —, No. 16-2897, 2019 WL 2722552, at *9 n.9 (3d Cir. July 1, 2019).

4

we must define the alleged right at an appropriate level of specificity.  See Bryan, 913

F.3d at 362.  In this case, Harper invokes various generalized rights, such as the right to

familial association.  The specific right that he claims, however, is the right of an adult

child to live with and care for an elderly parent in the parent's home.  Even defining the

right for Harper's benefit at that relatively high level of generality, that right was not

clearly established at the time of defendants' alleged conduct.

For a right to be clearly established, Supreme Court authority, Circuit authority or

(perhaps) a consensus among the courts of appeals must be sufficient to place the

existence of the right "beyond debate."  Sauers v. Borough of Nesquehoning, 905 F.3d

711, 719 (3d Cir. 2018) (citation omitted).  The Supreme Court has recognized the "right

of parents to make decisions concerning the care, custody, and control of their children."

Mammaro v. N.J. Div. of Child Prot. & Permanency, 814 F.3d 164, 170 (3d Cir. 2016)

(citation omitted).  But Harper has not cited and we have not located any Supreme Court

or Circuit authority addressing, much less clearly establishing, the right of an adult child

to live with and care for his or her parents.

To the contrary, our authority arguably suggests that such a right does not exist.

In McCurdy, we held that "the fundamental guarantees of the Due Process Clause do not

extend to a parent's interest in the companionship of his independent adult children."

352 F.3d at 830.  The precise scope of that holding may be open to debate.  See

Robertson v. Hecksel, 420 F.3d 1254, 1259 (11th Cir. 2005) (discussing McCurdy).  If

5

parents generally do not have a right to the companionship of their adult children, however, then it at least arguably follows that adult children do not have a right to the companionship of their parents, let alone the specific right to live with and care for them.[4]

Indeed, one District Court in a similar case relied heavily on McCurdy in reaching that very conclusion. See Evans v. Pitt Cty. Dep't of Soc. Servs., 972 F. Supp. 2d 778 (E.D.N.C. 2013), vacated in part on other grounds by Evans v. Perry, 578 F. App'x 229 (4th Cir. 2014) (per curiam). In that case, the plaintiff claimed that defendants wrongfully obtained an order removing her from her elderly mother's home and authorizing a governmental agency, rather than the plaintiff, to provide her mother's care. The plaintiff alleged that defendants thereby violated the "right of grown children to care for their elderly parents." Id. at 791.

The court, drawing on McCurdy, concluded that there was no such right. See id. at 792-95. The court did so even though, unlike in this case, the plaintiff also alleged that defendants restricted her ability to visit her mother and wrongfully revoked her status as her mother's attorney-in-fact. See id. at 786. We express no opinion on whether Evans

---

[4] Harper relies on one case recognizing the right of adult children to companionship with a parent. See Smith v. City of Fontana, 818 F.2d 1411, 1418 (9th Cir. 1987), overruled in part on other grounds by Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999) (en banc). In that case, the Ninth Circuit held that an adult child could state a claim for deprivation of that right when police officers used lethal force against a parent. See id. at 1418-19. We question whether that decision is consistent with the law of this Circuit under McCurdy, which similarly involved a claim of lethal force. Even if it is, however, the recognition of a general right to companionship with a parent in that Circuit and under the particular facts of that non-analogous case does not clearly establish the specific right that Harper claims in this one.

6

was correctly decided. For present purposes, however, <u>McCurdy</u> and <u>Evans</u> show that the right Harper claims was not clearly established at the time of defendants' alleged conduct.[5]

### B. The Municipal Defendants

Our conclusion that the right Harper claims was not clearly established does not resolve his claims against the municipal defendants, which cannot assert a qualified immunity defense to claims under § 1983. See <u>Owen v. City of Independence</u>, 445 U.S. 622, 638 (1980). To state a claim of municipal liability under <u>Monell</u>, Harper had to allege that his claimed injury resulted from either an official policy or custom. See <u>McTernan v. City of York</u>, 564 F.3d 636, 657-58 (3d Cir. 2009). Municipal liability also can be established by a failure to train. See <u>Estate of Roman v. City of Newark</u>, 914 F.3d 789, 798 (3d Cir. 2019), <u>petition for cert. filed</u> (U.S. Apr. 30, 2019) (No. 18-1372).

The District Court dismissed these claims because it concluded that Harper's allegations of a policy or custom were too conclusory. Harper does not challenge that ruling or even mention his <u>Monell</u> claims in his opening brief. Instead, he raises arguments addressed to those claims for the first time in reply. Thus, we could deem these claims forfeited.

---

[5] Qualified immunity is a defense to claims for damages but not for injunctive or declaratory relief. See <u>Panzella v. Sposato</u>, 863 F.3d 210, 216 (2d Cir. 2017); <u>Montanez v. Sec'y Pa. Dep't of Corr.</u>, 773 F.3d 472, 488 (3d Cir. 2014). Harper appears to have sought injunctive and declaratory relief only against Delaware County as noted above. To the extent that his complaint could be construed to seek such relief against the individual defendants, however, his claims for such relief are moot as also noted above.

Nevertheless, we agree that Harper's allegation in this regard were too conclusory. Harper referred generally to "policies, procedures, customs and/or practices" without identifying any specific policies or otherwise providing any reason to believe that they exist, let alone that they caused his claimed injury. (E.g., ECF No. 3 at 15 ¶ 67.) These conclusory allegations are insufficient. See McTernan, 564 F.3d at 658-59. Harper's conclusory allegations of failure to train are deficient as well because he alleged nothing suggesting a failure to train, let alone that the failure was a "deliberate or conscious choice." Estate of Roman, 914 F.3d at 798 (citation omitted). Nor has Harper raised anything suggesting that he could cure these deficiencies by amendment.

III.

For these reasons, we will affirm the judgment of the District Court. We have no doubt that the removal of Harper's mother from her home was emotionally taxing for him or that he would have preferred to continue living with her and providing her with care. Federal law, however, does not provide Harper with the relief he seeks under the circumstances presented here.