18-3858
*Lilakos v. New York City, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of April, two thousand twenty.

Present:
> ROBERT A. KATZMANN,
>> *Chief Judge*,
> RICHARD C. WESLEY,
> MICHAEL H. PARK,
>> *Circuit Judges*.

_____

LOUIS LILAKOS, CHRISTOPHER LILAKOS,

*Plaintiffs-Appellants*,

NICK PRITZAKIS, TIFFANY LILAKOS, C.L., a minor (son),

*Plaintiffs*,

v.                                    18-3858

NEW YORK CITY, VLADIMR PUGACH, in his individual and official capacity, ARTHUR LEVINE, a Police Officer assigned to the

Office of Special Enforcement, in his individual capacity and official capacity, JOSEPH GIGLIO, a Police Officer assigned to the Office of Special Enforcement, in his individual capacity and official capacity, ERVIN SANTIAGO, a Fire Inspector assigned to the Office of Special Enforcement, in his individual capacity and official capacity, KATHLEEN McGEE, Former Director of the Office of Special Enforcement, in her individual and official capacity, NEW YORK CITY MAYOR'S OFFICE OF SPECIAL ENFORCEMENT AKA THE OFFICE OF SPECIAL ENFORCEMENT, NEW YORK CITY DEPARTMENT OF BUILDINGS, DEREK LEE, Commissioner of the Department of Buildings, in his individual capacity and official capacity, NEW YORK CITY ENVIRONMENTAL CONTROL BOARD (ECB).

*Defendants-Appellants*,

JOHN DOE 1, NYPD Officer assigned to the 108 precinct, in his individual and official capacity, JOHN DOE 2, NYPD Officer assigned to the 108 precinct, in his individual and official capacity, JOHN DOE 3, NYPD Officer assigned to the 108 precinct, in his individual and official capacity, JOHN DOE 4, NYPD Officer assigned to the 108 precinct, in his official capacity,

*Defendants*.

_____

For Plaintiffs-Appellants:      Louis Lilakos, Christopher Lilakos, *pro se*, Sunnyside, NY.

2

For Defendants-Appellees:    Jeremy W. Shweder, Elina Druker, *for* James E. Johnson, Corporation Counsel of the City of New York, New York, NY.

Appeal from the United States District Court for the Eastern District of New York (Chen, *J.*; Bloom, *M.J.*)

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment is **AFFIRMED**.

Plaintiffs, Louis Lilakos ("Lilakos") and his son, Christopher Lilakos ("Christopher"), proceeding *pro se*, appeal from three orders of the United States District Court for the Eastern District of New York (Chen, *J.*), each adopting a Report & Recommendation (Bloom, *M.J.*) on Defendants' two Rule 12(b)(6) motions to dismiss and Rule 56 motion for summary judgment, respectively.

Plaintiffs sued the City of New York and several City officials, claiming that Defendants violated their constitutional rights when New York City's Department of Buildings, through the Mayor's Office of Special Enforcement, issued in June 2013 five Notices of Violation ("NOV") and an emergency Vacate Order ("VO") pursuant to New York City Administrative Code § 28-207.4 against their home for operating an illegal hostel in a permanent residence.

In August 2013, Lilakos unsuccessfully challenged the NOVs before the Environmental Control Board ("ECB"). He appealed to the Office of Administrative Trials and Hearings, which issued a decision in December 2013 dismissing one NOV but

3

sustaining the other four. He also applied to the Office of Special Enforcement multiple times in August and September 2013 for the Department of Buildings commissioner to rescind the VO. In 2014, Lilakos commenced two Article 78 proceedings in state court, one challenging the ECB's decision with respect to the four sustained NOVs; the other challenged the validity of the VO itself. After receiving unfavorable decisions in each, Plaintiffs commenced this case in federal district court challenging the validity of the NOVs and the VO and claiming violations of equal protection and procedural and substantive due process. The district court, in a series of rulings following the reports and recommendations of the magistrate judge, dismissed all of Plaintiffs' claims. They timely appealed.[1]

We assume the parties' familiarity with the underlying facts and procedural history, as well as the issues for review. We review *de novo* both the dismissal of a complaint under Rule 12(b)(6) and the grant of summary judgment under Rule 56. *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

## I. Christopher Lilakos's Standing

The district court dismissed Christopher's parallel due process claims on the ground that he does not have a legally cognizable property interest in the house, because he is neither an owner nor a tenant of the property. It is likely that Christopher does have

---

[1] Plaintiffs do not raise any arguments about several of their claims not noted above and have therefore abandoned any challenge to those claims. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995).

standing under New York law—at least to the extent he challenges an alleged wrongful eviction as opposed to deprivation of property. Although the New York State Court of Appeals has not spoken on this issue, the weight of lower state court authority counsels that a minor child has an independent possessory right to reside in the family home. *See, e.g.*, *Nauth v. Nauth*, 42 Misc. 3d 672, 675 (N.Y. Civ. Ct., Bronx Cty. 2013) (collecting cases). That "right to reside" confers standing to challenge an alleged wrongful displacement.[2]

That Christopher has standing, however, does not mean he was properly before the district court. As a minor, Christopher could not represent himself, and as a non-lawyer, his father could not bring an action on his behalf. *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990). An attorney never appeared to represent Christopher; the district court could have dismissed his claims for that reason. And though Christopher is no longer a minor, the matter is of no moment, as each of Christopher's would-be claims fails.

---

[2] Christopher also argues that he has a legally cognizable property interest in the house under New York's intestate laws. *See* N.Y. Est. Powers & Trusts Law § 4-1.1(a)(3) (property of decedent with no spouse is distributed to issue by representation); N.Y. Est. Powers & Trusts Law § 1-2.16 (by representation means equal shares distributed among surviving issue in next generation). A potential future interest in possibly inheriting a share in the value of a house, however, does not give rise to a cognizable property interest permitting suit in this context. Christopher's interest is a "contingent, future executory interest in property (an interest that might become possessory at some point down the road)." *Luis v. United States*, 136 S. Ct. 1083, 1093 (2016). Moreover, Lilakos sold the property in November 2014, eliminating any chance of inheritance for Christopher.

## II. Equal Protection

Plaintiffs fail to state an equal protection claim under either a selective enforcement or a "class-of-one" theory.

To proceed under a selective enforcement theory, Plaintiffs must plausibly allege that any selective treatment they experienced "was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure [them]." *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995) (citation omitted).

Plaintiffs' allegations of being "singled out" and "targeted" are conclusory and cannot be accepted as true at the motion to dismiss phase. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor do Plaintiffs' allegations of differential treatment, standing alone, show malice. *Bizzarro v. Miranda*, 394 F.3d 82, 87 (2d Cir. 2005) ("To prevail, plaintiffs must prove that the disparate treatment was *caused by* the impermissible motivation. They cannot merely rest on a showing of disparate treatment." (emphasis in original)). Because the complaint is devoid of any facts suggesting malice, the district court correctly dismissed Plaintiffs' equal protection claim based on selective enforcement.

To proceed under a class-of-one theory, Plaintiffs need not show malice, but they must plausibly allege that "there is no rational basis for the difference in treatment," *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), as well as "an extremely high degree of

6

similarity between themselves and the persons to whom they compare themselves," *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006).

Plaintiffs plead as comparators (1) other permanent residences that allegedly operated as illegal hostels about which the Department of Buildings received complaints in 2013; (2) other properties against which the Department of Buildings issued a VO in 2013; (3) other properties on which an individual violated a VO; and (4) Lilakos's brother's house two blocks away. Although Plaintiffs include dozens of allegations about the existence of other illegal hostels, Plaintiffs fail to explain how those residences are like theirs, other than alleged transient occupancy. Without specific facts showing that the comparators are "similar in relevant respects" to Lilakos's house, *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 143 (2d Cir. 2010), they share only one thing in common— the same alleged violation of law. That is insufficient to state an equal protection claim under this exacting standard. *See Hu v. City of New York*, 927 F.3d 81, 100 (2d Cir. 2019).

### III. Validity of the Notices of Violation and the Vacate Order

The district court was correct to dismiss any claims based on the validity of the NOVs and the VO. We apply New York collateral estoppel law to New York judgments, and under New York law, a party may not "relitigat[e] an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 455 (1985) (internal quotation marks and citation omitted).

7

In Lilakos's Article 78 proceeding to review the ECB's determinations with respect to the NOVs, the state court rejected his argument that they were issued in an arbitrary and capricious manner. Instead, it found that Lilakos used the property in a manner inconsistent with its certificate of occupancy, and "because there was substantial evidence that the property was primarily being used to house multiple transient occupants overnight, the ECB's determination that the property did not have the requisite fire alarm system, sprinkler system, and number of means of egress was supported by substantial evidence and consistent with its prior precedent." *Lilakos v. Envtl. Control Bd.*, 148 A.D.3d 893, 895 (2d Dep't 2017).

In his Article 78 proceeding to review the validity of the VO, the state court found that Lilakos "failed to demonstrate that he was entitled to rescission or annulment of the vacate order on the basis that the Commissioner's determination to issue the vacate order was illegal, an abuse of discretion, or arbitrary and capricious"—including the determination that "there was 'imminent danger to life or public safety or safety of the occupants or to the property.'" *Lilakos v. Lee*, 148 A.D.3d 896, 896–97 (2d Dep't 2017).

These decisions have preclusive effect. Plaintiffs fail to explain how any of the alleged deficiencies in those proceedings prevented a full and fair opportunity to litigate the validity of the NOVs or the VO. We therefore affirm the district court's dismissal of any claim challenging their validity on collateral estoppel grounds.

8

**IV.    Procedural Due Process**

The district court properly granted summary judgment with respect to Plaintiffs' procedural due process claim. As a general matter, due process requires a state to provide a hearing before depriving a person of their property; but when there is an emergency, only a meaningful post-deprivation process is required.[3] *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 50 (2d Cir. 2009). The state court proceedings determined that the emergency VO was valid, and as discussed, Plaintiffs cannot relitigate that issue on appeal. As a result, Plaintiffs were not entitled to any pre-deprivation process.

Plaintiffs' procedural due process claim therefore depends on whether their post-deprivation proceedings were adequate. We have "held on numerous occasions that an Article 78 proceeding is a perfectly adequate post-deprivation remedy," *Hellenic Am. Neighborhood Action Comm.*, 101 F.3d at 881; we have expressed concern only where there is a lengthy deprivation, *see Panzella v. Sposato*, 863 F.3d 210, 218 (2d Cir. 2017). Here, any delay did not violate due process. The NOVs and VO were issued within a day of each other; over the following months, Lilakos challenged the NOVs administratively and

---

[3] This is true whether the deprivation was a "random act" or whether it occurred "in the more structured environment of established state procedures." *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). The latter scenario simply demands a closer examination of the adequacy of the post-deprivation process. *See id.* ("When the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of post-deprivation procedures will not, ipso facto, satisfy due process.").

9

applied for rescission of the VO; and Lilakos commenced two Article 78 proceedings within a year.

Indeed, even though he was required to challenge the NOVs at the ECB before commencing an Article 78 proceeding, Lilakos could have challenged the validity of the VO in court months earlier. Because NOVs are separate from a VO under the Administrative Code, challenging the NOVs before the ECB was not an administrative remedy that preceded judicial review of the VO. On September 30, 2013, Lilakos was informed that, because he had not certified that the underlying violations were corrected, the VO would not be rescinded. At that point, he could have challenged the VO under Article 78, as there were no avenues to administratively review that denial. *Cf. Cunningham v. City of New York*, 2011 N.Y. Slip Op. 34284[U], at *1 (Sup. Ct., N.Y. Cty. 2011).

Moreover, Plaintiffs could have returned home just by certifying that the underlying violations listed in the NOVs had been corrected. *See* N.Y.C. Admin. Code § 28-207.4.3. According to the certification form,[4] Lilakos had the option to admit to the violations and avoid a hearing. If he did not wish to admit the violations, however, Lilakos could have posted security for the fines while the violations were pending; signed the certification form indicating that the violations had ceased; applied to rescind the VO

---

[4] We take judicial notice of the certification form available online at https://www1.nyc.gov/assets/buildings/pdf/AEU2.pdf. *See* Fed. R. Evid. 201(b)(2). The bottom right-hand corner of the form indicates that this version was operative as of "05/13."

and challenge any denial thereof judicially; and challenged the NOVs before the ECB and through Article 78. Plaintiffs' decision to opt out and wait was a self-imposed delay, not a function of the Article 78 remedy.

## V.    Substantive Due Process

Finally, the district court properly granted summary judgment in favor of Defendants on the substantive due process claim. Plaintiffs argue that there is a dispute of fact as to what they were required to certify to return home—whether they had to certify only that the violations had ceased (*i.e.*, only permanent residents remained in the house), or whether they had to certify that they had conformed their home to code (*i.e.*, constructed a legal transient occupancy hostel); and separately, whether they had to admit to the violations to return home no matter what changes they made.

This "dispute" does not create a question of material fact. Even under Plaintiffs' understanding of the certification process, it still provided an expedited means to return home.[5] Plaintiffs chose an alternate route—to wait and challenge the NOVs before the ECB and then challenge the NOVs and VO in Article 78 proceedings. They lost in those proceedings; the fact that they were not able to assert their innocence any earlier is meaningless.

---

[5] Accordingly, Plaintiffs-Appellants related argument—that "ceasing illegal transient occupancy" is too vague of an order with which to comply—is irrelevant.

11

Nothing about the options available to Plaintiffs shocks the conscience, *see Pena v. DePrisco*, 432 F.3d 98, 112 (2d Cir. 2005)—including that one way to expedite their desired result was to admit to the violations and cure them. Substantive due process does not demand that anyone who is issued a VO may remain in their home while they challenge the merits of that VO. That would defeat the purpose of an emergency order to vacate the premises.

We have considered Plaintiffs' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk