**F I L E D**

**UNITED STATES COURT OF APPEALS**

**June 27, 2007**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

LON PERRY EDGE,

Defendant - Appellant.

No. 06-7076

(E.D. Oklahoma)

(D.C. No. CR-05-86-01-RAW)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, **LUCERO**, and **HARTZ**, Circuit Judges.

Lon Perry Edge was indicted in the United States District Court for the

Eastern District of Oklahoma on two counts of being a prohibited person in

possession of a firearm, *see* 18 U.S.C. § 922(g)(8), one count of being a

prohibited person in possession of ammunition, *see id.*, and one count of

possession of marijuana, *see* 21 U.S.C. § 844. The indictment alleged that he was

a prohibited person because he was subject to a domestic-relations protective

order. After he pleaded not guilty, a jury convicted him on all but the drug

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

charge. At sentencing the district court credited testimony from Mr. Edge's estranged wife that he had pointed a firearm at her, and the court accordingly enhanced his offense level by four under the United States Sentencing Guidelines (USSG). *See* USSG § 2K2.1(b)(5)[1] ("If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels."). He was sentenced to 44 months' imprisonment. On appeal Mr. Edge contends that (1) there was insufficient evidence to support his conviction because the protective order was entered without notice or opportunity to participate; (2) the sentencing judge should not have considered conduct underlying charges on which he had been acquitted in state court; and (3) the evidence presented at sentencing did not support his enhancement. We have jurisdiction under 28 U.S.C § 1291 and affirm.

## I.    BACKGROUND

On October 15, 2003, shortly after Vicki Edge Dixon filed a petition for dissolution of her marriage to Mr. Edge, Oklahoma District Judge Don Ed Payne issued at Ms. Dixon's request a temporary protective order prohibiting Mr. Edge from contacting her or going near her or her residence. The order set a hearing for October 28 to consider a permanent protective order. On November 6 Judge Payne issued a permanent protective order.

---

[1] The 2006 amendments to the Sentencing Guidelines redesignated Section 2K2.1(b)(5) as Section 2K2.1(b)(6).

Twenty months later, on July 5, 2005, Ms. Dixon was driving to a store on a dirt road that took her past Bill Hughes's residence, about a mile and a half from her home. She knew that Mr. Edge had driven on the road earlier in the day and that Mr. Edge often visited Mr. Hughes. As she drove by Mr. Hughes's house at between 35 and 40 miles per hour, Mr. Edge approached her truck on the driver's side and pointed a gun at her. The gun appeared to her to be a black handgun with a clip in it.

When she saw the gun, she ducked toward the seat of the truck and continued driving, accelerating. After driving half a mile she stopped, turned around, and drove back to her home, again passing Mr. Hughes's home. Mr. Edge did not point the gun at her on this occasion. She explained that she returned home, despite having to pass Mr. Hughes's house once more, because she wanted to get to the nearest phone to call the police and report Mr. Edge's actions.

Law-enforcement officers arrived between 35 and 45 minutes after her phone call, took her statement, and proceeded to Mr. Hughes's house to confront Mr. Edge. On the way the officers observed Mr. Edge driving toward them in the middle of the road. They pulled to the shoulder to avoid a collision, turned around, and conducted a traffic stop. During the stop the officers observed in the vehicle in plain view an open container of beer, a black handgun, a shotgun, and ammunition. After the officers determined that Mr. Edge was subject to a protective order, they arrested him.

On July 7, 2005, Mr. Edge was charged in state court on five counts: (1) feloniously pointing a firearm; (2) violating a protective order; (3) transporting an open container of alcohol; (4) driving left of center; and (5) having defective automobile equipment. He was acquitted on the first two charges, and the remaining three were later dismissed by the state. After the state-court acquittal Mr. Edge was indicted in federal court and tried on January 3 and 4, 2006. He was convicted and sentenced to 44 months' imprisonment.

## II.   ANALYSIS

### A.   Protective Order

Mr. Edge challenges his conviction by contesting his status as a "prohibited person" under 18 U.S.C. § 922(g)(8). The statute provides:

> It shall be unlawful for any person . . .
> who is subject to a court order that—
> (A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;
> (B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and
> (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or
> (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury . . .
>
> to . . . possess in or affecting commerce, any firearm or ammunition.

Mr. Edge challenges only whether the evidence established compliance with subparagraph (A), which requires notice of the hearing and an opportunity to participate. The jury was instructed on this requirement. When a defendant challenges a jury finding of an element of his offense, "we view the evidence, both direct and circumstantial, in the light most favorable to the government and, without weighing conflicting evidence or considering the credibility of witnesses, we determine whether that evidence, if believed, would establish the . . . element." *United States v. Barajas-Chavez*, 162 F.3d 1285, 1289 (10th Cir. 1999).

Although Mr. Edge testified that he never received notice of a hearing regarding a permanent protective order and was never permitted an opportunity to object, two other witnesses testified to the contrary: Deputy Sheriff Rita Duncan said that she served Mr. Edge with the temporary protective order, which provides notice of the later hearing. And Judge Payne stated that the order itself (which has "by agreement of the parties" written on it) indicated that "rather than [Mr. and Mrs. Edge deciding] to present evidence at a hearing," they "just agree[d] that a protective order could be entered into to resolve the issue, the dispute." Aplt. App. at 66. This testimony, if believed, would have established that Mr. Edge had notice of his hearing.[2]

---

[2]In a footnote Mr. Edge seems to contend that the jury was improperly instructed that "'whether he chose to be present or not is of no consequence.'"

(continued...)

As to the opportunity to participate, Mr. Edge appears to argue that the order could comply with the statute's opportunity requirement only if he were represented by counsel. But he cites no support for that proposition, and we are aware of none. *See United States v. Wilson*, 159 F.3d 280, 289–90 (7th Cir. 1998) (court rejected defendant's contention that he was not a prohibited person under 18 U.S.C. § 922(g)(8) because he was not represented by counsel when the protective order was issued); *see also United States v. Banks*, 339 F.3d 267, 271–72 (5th Cir. 2003) (discussing *Wilson* with approval).

**B.      Basing Sentencing Findings on Acts on Which State Jury Acquitted Mr. Edge**

Mr. Edge was acquitted in state court on the charge of feloniously pointing a firearm. He contends that the sentencing judge therefore could not enhance his sentence on the ground that he had pointed the handgun at Ms. Dixon. Doing so, he says, violates the Sixth Amendment because a jury did not find the necessary facts and violates the Fifth Amendment because the judge did not employ the beyond-a-reasonable-doubt burden of proof. We disagree.

Mr. Edge's Sixth Amendment argument is precluded by precedent. The Sixth Amendment right to a jury trial is not implicated by judicial fact finding under a discretionary sentencing regime, as is now the case in federal court. *See*

_____

[2](...continued)
Aplt. Br. at 43 n.30. But he fails to explain why the quoted language was improper, so we decline to address the issue. *See United States v. McConnel*, 464 F.3d 1152, 1158 (10th Cir. 2006).

*Rita v. United States*, No. 06-5754, 2007 WL 1772146, at *13 (U.S. June 21, 2007) (Sixth Amendment is violated by increase in sentence based on judicial fact finding only if the sentencing statute "*forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede)."); *United States v. Ramirez*, 479 F.3d 1229, 1255–56 (10th Cir. 2007). That Mr. Edge was acquitted in state court of the conduct considered by the sentencing judge is of no moment. *See United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005).

As to Mr. Edge's Fifth Amendment due-process argument, we have repeatedly held that the standard of proof for sentencing factors is preponderance of the evidence. *See United States v. Crockett*, 435 F.3d 1305*,* 1319 (10th Cir. 2006); *United States v. Oberle*, 136 F.3d 1414, 1424 (10th Cir. 1998). Mr. Edge has given us no reason to reject that standard when considering "acquitted conduct." Indeed, *United States v. Watts*, 519 U.S. 148 (1997) (per curiam), which held that acquitted conduct could be considered by a sentencing judge, noted that "application of the preponderance standard at sentencing generally satisfies due process," *id.* at 156. It qualified that statement only by suggesting that perhaps clear and convincing evidence might be necessary "in extreme circumstances" when the conduct "would dramatically increase the sentence." *Id.* Mr. Edge has pointed to no such extreme circumstance here. We are not persuaded that it makes a due-process difference that the sentencing judge had not

-7-

heard the state-trial evidence, and we find nothing in *United States v. Booker*, 543 U.S. 220 (2005), to alter this analysis.

## III.   SUFFICIENCY OF EVIDENCE AT SENTENCING

Mr. Edge contends that there was insufficient evidence that he pointed a firearm at Ms. Dixon, so the sentencing enhancement based on that alleged conduct must be rejected. We review a judge's decision to enhance a sentence for clear error. *See United States v. Valdez-Arieta*, 127 F.3d 1267, 1270 (10th Cir. 1997). "Under the clearly erroneous standard, we will not reverse the district court's findings unless they are without factual support in the record, or unless after reviewing all the evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (internal quotation marks omitted).

The sentencing judge's decision was not clearly erroneous. Ms. Dixon testified at sentencing that Mr. Edge pointed the gun at her. It was not unreasonable for the judge to believe the witness. *See United States v. Wiseman*, 172 F.3d 1196, 1207 (10th Cir. 1999) (appellate court shows great deference to credibility determinations). Nothing she said was inherently unbelievable or contrary to the laws of nature. And although Mr. Edge says that his inability to secure the state-court trial transcript before sentencing prevented the court from hearing Ms. Dixon's absurd testimony in the earlier trial, he had the opportunity to ask for a continuance and declined to do so.

## IV.   CONCLUSION

We AFFIRM the judgment below.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge