USA v. Bramer

In the
# United States Court of Appeals
for the
# Second Circuit

August Term, 2019

Argued:   January 15, 2020
Decided: April 16, 2020

Docket No. 18-3782

UNITED STATES OF AMERICA,

*Appellee,*

v.

MICHAEL BRAMER, JR.,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of New York (Sharpe, *J.*)
No. 1:17-cr-00371

Before:

KATZMANN, *Chief Judge*, HALL, LYNCH, *Circuit Judges*.

Defendant-Appellant Michael Bramer, Jr. appeals the December 12, 2018 judgment of the United States District Court for the Northern District of New York (Sharpe, *J.*) and its December 6, 2018 decision denying his Rule 29 motion for judgment of acquittal. We hold that because there was insufficient evidence that Bramer had been issued a protective order "after a hearing" in which he had "an opportunity to participate," as required by 18 U.S.C. § 922(g)(8)(A), no rational trier of fact could find that when Bramer submitted an application to purchase a firearm he violated § 922(a)(6) by knowingly lying about whether he was subject to such an order.

REVERSED.

JAMES P. EGAN, Assistant Federal Public Defender, *for* Lisa A. Peebles, Federal Public Defender, Syracuse, NY *for Defendant-Appellant*.

RAJIT S. DOSANJH, Assistant United States Attorney (Thomas R. Sutcliffe, Assistant United States Attorney *on the brief*), *for* Grant C. Jaquith, United States Attorney for the Northern District of New York, *for Appellee.*

HALL, *Circuit Judge*:

On October 13, 2016, Defendant-Appellant Michael Bramer, Jr. received a protective order issued by the Town of Malta Justice Court (the "Justice Court"). On October 24, 2016, Bramer visited a licensed firearms dealer and attempted to purchase a firearm. He completed the required Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF") Form 4473 that potential firearm buyers must submit. Question 11.h on the form asked whether Bramer was "subject to a court order restraining [him] from harassing, stalking, or threatening [his] child or an intimate partner or child of such partner[.]" Bramer responded by checking the "No" box. Question 11.h refers the applicant to instructions which define a court order in language that is virtually identical to the statutory language defining a relevant order found in 18 U.S.C. § 922(g)(8), which prohibits possession of a firearm by a person subject to certain kinds of protective orders. Based on Bramer's answer of "No" to Question 11.h, a federal grand jury in the Northern District of New York returned a single-count indictment charging him with providing false information to a licensed dealer in connection with the attempted acquisition of a firearm—a violation of 18 U.S.C. § 922(a)(6). After a two-day trial, Bramer was found guilty, and following denial of his posttrial motions Bramer was sentenced to a term of imprisonment of 43 days (time served) and a three-year term of supervised release. This appeal followed.

Because Bramer's response to Question 11.h on the Form 4473 was false only if the court order to which he was subject was the type of order specified in the instructions and 18 U.S.C. § 922(g)(8), the government was required to prove that

3

the Justice Court order was "issued after a hearing of which [Bramer] received actual notice, and at which [Bramer] had an opportunity to participate," 18 U.S.C. § 922(g)(8)(A).[1]   Because the government's proof at trial was insufficient to show that Bramer "had an opportunity to participate" in the Justice Court, we hold that there was insufficient evidence to find that Bramer's response to Question 11.h was knowingly false and therefore REVERSE the judgment of conviction.

## BACKGROUND

### I.   Factual Background

On October 12, 2016, New York State Trooper Christopher Esposito contacted Bramer via telephone and informed him that an individual with whom Bramer had previously resided and had a child was pressing charges against him for domestic violence.[2]   At that time, Trooper Esposito informed Bramer of the general nature of the charges, "[m]ost likely" explained to him "what happens during an arraignment," and told Bramer that "if he [came] to [Esposito], then he

---

[1] The statutory language of 18 U.S.C. § 922(g)(8)(A) is relevant because the parties agreed that the government bore the burden of proving the order complied with its language. Bramer does not dispute that the evidence at trial was sufficient to establish that the order complied with the requirements of § 922(g)(B) and (C).

[2] The nature of the charges were not revealed at trial, nor is the individual's name important for our purposes.

4

could sort of start th[e court] process" to deal with the allegation cooperatively. App'x 67–69. Bramer turned himself in to Trooper Esposito the following day. Trooper Esposito then escorted Bramer to the Justice Court for arraignment. According to Trooper Esposito's initial testimony at Bramer's federal trial, the court was in session; Town Justice James Fauci was presiding. The Justice Court is "a fairly busy court," and "on court days during court hours, [the] courtroom can be pretty full[.]" App'x 70. Trooper Esposito could not "recall specifically if there were members of the public" present when he and Bramer arrived for Bramer's arraignment, nor could he recall which or how many members of the court staff were present. App'x 71–72. Bramer did not have a lawyer present at the arraignment.

The Town of Malta typically has an audio recording mechanism to keep records of daily court proceedings, and Trooper Esposito testified that it would be out of the ordinary if there was no recording for a case that took place there. Though the record is unclear as to why, the government did not introduce a recording of Bramer's arraignment into evidence.

Trooper Esposito could not recall "the specific conversation" between the court and Bramer at the arraignment. App'x 80. He testified that Judge Fauci

"explained to [Bramer] the charges against him, [and] explained to him his rights," and that Judge Fauci released Bramer on his own recognizance, setting a date for the next appearance. App'x 55. Trooper Esposito also testified that Judge Fauci issued an order of protection and set a second appearance date for approximately thirty days later. According to Trooper Esposito, the judge "explained to Mr. Bramer what an order of protection is" and provided him a copy of the order. App'x 55.

The protective order, issued under New York Criminal Procedure Law § 530.12(1)(a) and signed by both Bramer and Judge Fauci, indicates that Bramer was "advised in Court of issuance and contents of [the] Order[,]" and that the "Order [was] personally served on [Bramer] in Court." App'x 242. The order also states that "it is a federal crime to . . . buy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect." App'x 242. Although there are different types of orders of protection that may be issued under New York law, *see* N.Y. C.P.L. §§ 530.12, 530.13, the order issued to Bramer was "a stay-away order of protection[,]" App'x 58, requiring that he stay away from the individual who had made the allegation against him, that he refrain from communicating with her, and that he refrain from engaging in an extensive

6

list of criminal conduct directed at the protected person.[3]   Trooper Esposito's testimony and the Justice Court's order countersigned by Bramer are the only evidence of what happened in court that day.

Nine days later, on October 24, 2016, Bramer entered Frank's Gun Shop, a federally licensed dealership in Amsterdam, New York.   The general manager of the store, Frank J. Havlick, testified that he was working that day but did not recall interacting with Bramer.   Havlick did, however, recognize his own handwriting on the Form 4473 and acknowledged that he completed portions of the form with Bramer.

Questions 11.a through 11.l of Form 4473 are a series of yes or no questions to which the potential purchaser must respond by entering check marks.   Bramer indicated in response to question 11.a that he was "the actual transferee/buyer of the firearm" at issue on the form.   App'x 235.   As previously noted, in response

---

[3] Specifically, the order required Bramer to "[s]tay away from" the protected person, as well as her home, school, business, and place of employment; "[r]efrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with" the protected person; and "[r]efrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any other criminal offense against" the protected person. App'x 241.

to Question 11.h, Bramer checked the "No" box, affirming that he was not "subject to a court order restraining [him] from harassing, stalking, or threatening [his] child or an intimate partner or child of such partner[.]"  *Id.*

Question 11.h directs the buyer to the "instructions" on Page 4 of the Form 4473 for more information regarding the question.   App'x 235.   To help buyers determine whether they are subject to a qualifying restraining order, such that they should answer "yes" to Question 11.h, the "instructions" define the type of orders that qualify as a restraining order for purposes of the Form 4473.   The instructions, which track the language of 18 U.S.C. § 922, provide as follows:

> Under 18 U.S.C. § 922, firearms may not be sold to or received by persons subject to a court order that: (A) was issued after a hearing which the person received actual notice of and had an opportunity to participate in; (B) restrains such person from harassing, stalking, or threatening an intimate partner or child or such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child and (C)(i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury.[4]

---

[4] The only difference between the language on the Form 4473 and § 922(g)(8) is that the Form says "was issued after a hearing which the person received actual notice of and had an opportunity to participate in" while the statutory language says "was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate[.]"   The

8

App'x 238.

Bramer completed the Form 4473 and submitted it to the dealer, who entered it into the National Instant Background Criminal Check System ("NICS"), which is managed by the Federal Bureau of Investigation. The response to the submission to NICS "was a deny," App'x 93, thereby blocking Bramer's attempt to purchase a firearm.

Under questioning from an ATF Special Agent prior to his arrest, Bramer indicated that "he answered no to question 11.h because he did not read the fine print on the order of protection, that he had attempted to purchase the firearm for hunting, and that he had not bought the firearm to cause harm to the protected person." App'x 110.

Based on Bramer's effort to purchase a firearm and his response to Question 11.h on the Form 4473, a federal grand jury returned a single-count indictment charging Bramer with providing false information to a licensed dealer in connection with his attempted acquisition of a firearm, in violation of 18 U.S.C.

instructions also provide a definition of "intimate partner" which tracks the term's definition in 18 U.S.C. § 922(g)(8). *See* App'x 238 ("An 'intimate partner' of a person is: the spouse or former spouse of the person, the parent of a child of the person, or an individual who cohabitates or cohabitating [*sic*] with the person.").

9

§ 922(a)(6). After a two-day jury trial, Bramer was found guilty. At the close of evidence, Bramer moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal, which the district court denied. Bramer renewed this motion after the jury verdict and also moved for a new trial under Federal Rule of Criminal Procedure 33. The district court denied both motions and judgment was entered on December 12, 2018. Bramer timely appealed.

## II. Statutory Framework

Two subsections of 18 U.S.C. § 922 are relevant to the issues in this case. Bramer was convicted of violating 18 U.S.C. § 922(a)(6), which provides that it shall be unlawful:

> [F]or any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly to make any false or fictitious oral or written statement . . . intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm . . . [.]

The "false or fictitious oral or written statement" with which Bramer was charged is his response to Question 11.h. Question 11.h is apparently intended to identify would-be purchasers who are prohibited from possessing firearms by 18 U.S.C. § 922(g)(8). 18 U.S.C. § 922(g)(8) provides in full that it is unlawful for any person

10

to receive any firearm or ammunition if the person is subject to a court order that:

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury[.]

We are not called upon to decide whether Bramer's negative answer to the question asking whether he was "subject to a court order restraining [him] from harassing, stalking, or threatening [his] child or an intimate partner or child of such partner" could be found to be a "false or fictitious . . . statement . . . intended or likely to deceive" a dealer within the meaning of § 922(a)(6) if that question stood alone or undefined. Rather, the parties agree that the meaning of the term "court order" in Question 11.h was limited by the instructions on the form to court orders of the type defined in § 922(g)(8). In order to prove Bramer answered the question falsely, the government was therefore required to prove he was, in fact, subject to a court order as defined in that statute. We are thus required to decide

11

whether Bramer's order was issued after a "hearing" of which he received "actual notice" and in which he had an "opportunity to participate."

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the sufficiency of evidence and the district court's denial of a Rule 29 motion for judgment of acquittal. *United States v. Blaszczak*, 947 F.3d 19, 30 (2d Cir. 2019); *United States v. Florez*, 447 F.3d 145, 154 (2d Cir. 2006). A defendant challenging the sufficiency of the evidence "bears a heavy burden because a reviewing court must consider the evidence in the light most favorable to the prosecution and uphold the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Blaszczak*, 947 F.3d at 30 (internal quotation marks, citations, and emphasis omitted).

**DISCUSSION**

Bramer argues that the government failed to prove that the protective order to which he was subject—the basis for the charged false statement on the Form 4473—meets the requirements of an order defined in 18 U.S.C. § 922(g)(8). Specifically, he argues the government failed to present evidence that the order issued after a "hearing of which [he] received actual notice, and at which [he] had

12

an opportunity to participate." 18 U.S.C. § 922(g)(8)(A).[5] Given the paucity of evidence about what occurred in the Justice Court proceedings, we agree; we do not see sufficient evidence in the record on which any rational trier of fact could have found, without speculating, that Bramer had an "opportunity to participate" in the events leading to the issuance of the order. Because the government acknowledges Bramer preserved this argument for appeal, *see also Blaszczak*, 947 F.3d at 31, and because we find this issue to be determinative, we need not address Bramer's alternative arguments that he was not provided with a "hearing" and that he did not receive adequate "notice" to satisfy § 922(g)(8)(A).

In response to Bramer's argument regarding insufficient evidence of his "opportunity to participate" in the Justice Court proceeding, the government, citing *United States v. Young*, 458 F.3d 998 (9th Cir. 2006), counters that this requirement is "a minimal one" that is fulfilled by the fact that there was a hearing and that Bramer was present. By the government's proposed standard, so long

[5] Our only case discussing the requirements of § 922(g)(8)(A) is *Panzella v. Sposato*, 863 F.3d 210 (2d Cir. 2017). There we made the straightforward observation that a protective order issued *ex parte* in New York State would not satisfy these requirements. *Panzella*, 863 F.3d at 214. We did not, however, undertake to define the minimum circumstances that *would* satisfy them. The case thus provides little insight into whether a hearing at which a defendant was present gave the defendant adequate "notice" and "opportunity to participate" to satisfy the statute.

as nothing "physically prevent[ed] . . . Bramer from speaking that day," as Trooper Esposito testified was the case, App'x 55, Bramer could have objected to the order.

Our job is not to speculate about what is possible, however. We must uphold the jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis deleted). We "may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999) (internal quotation marks omitted).

We begin our analysis of what constitutes an opportunity to participate by considering factors weighed by courts that have confronted this issue. We look first to *Young*, which the government relies on. *Young* holds that an opportunity to participate means only that "the defendant *could* have objected to the entry of the order or otherwise engaged with the court as to the merits of the restraining order." *Young*, 458 F.3d at 1009. The Ninth Circuit articulated this formulation in light of the facts before it, and those facts are far more compelling than in Bramer's case. The record in *Young* contained a transcript of the initial

14

proceedings before the issuing court. *See id.* at 1001–02. At the arraignment at which the qualifying order was issued, the judge "engaged in a lengthy dialogue" with the defendant, who "at least once . . . questioned [the issuing judge] when he had a concern or required clarification." *Id*. at 1009. Additionally, the defendant and the judge "had engaged in a lengthy colloquy" at the preliminary hearing two days earlier, further demonstrating that the defendant "was capable of participating . . . to whatever extent he felt was necessary." *Id.* Although the defendant appeared pro se at the arraignment, counsel had been appointed to represent him at the preliminary hearing. *Id.* None of those facts is present in this case.

Unlike *Young*, here there was only one proceeding before a judge prior to the entry of the order. Although the Town of Malta regularly records its court proceedings, no transcript or recording of the hearing was produced. The government chose to prove what happened in the Justice Court (1) through the testimony of Trooper Esposito (who was present for those proceedings), and (2) by whatever the contents of the order might reasonably imply.

Trooper Esposito explained that the Justice Court could be "a fairly busy court" that can get "pretty full" when in session. App'x 70. The Trooper

15

recalled that the judge "explained to [Bramer] what an order of protection is." App'x 55. He could not remember, however, any specific interactions between the court and Bramer, and he provided no testimony that the court made any particular findings before issuing the order. There was also no testimony that the judge made any particular determination regarding Bramer's alleged conduct,[6] nor any evidence detailing what Bramer was allowed to do or say in court before the Justice Court issued the order.

Turning to the order itself, there is no indication that Bramer agreed to or objected to its entry, only that Bramer was advised in Court of its issuance and contents and that the "[o]rder [was] personally served on [Bramer] in Court." App'x 242. No evidence suggests that the court engaged in any type of exchange with Bramer, asked Bramer if he understood what the court was saying to him, or asked if Bramer would agree to the terms set forth in the order. The ATF Special Agent on the case even testified that Bramer "could not understand the correlation between the order of protection and the attempted purchase and denial." App'x

---

[6] Under New York law, in fact, the order did not require the judge to make any sort of determination, legal or factual, before issuing it. N.Y. C.P.L. § 530.12(1)(a) ("[F]ailure to make . . . a determination shall not affect the validity of such temporary order of protection."). And the order issued to Bramer does not contain an indication that the judge made any determination, a fact that tips against finding that there was an "opportunity to participate."

16

110. The order contains an unchecked box which, if checked, would have indicated Judge Fauci had determined that there was "good cause . . . for issuance of an order of protection." App'x 241. That the box was unchecked before the order was issued is yet another sign of the apparently perfunctory nature of whatever occurred at the Justice Court that day.

Another factor courts have considered is whether a defendant is represented by counsel at the underlying proceeding. One court in this Circuit has ruled that a court issuing a qualifying order does not need "to inquire of a defendant or his lawyer if they have any objections to make[.]" *United States v. Falzone*, 1998 WL 351471, at *2 (D. Conn. June 2, 1998). Further, multiple courts have held that § 922(g)(8)(A) does not require representation or participation by counsel for the order in question to meet the statutory requirements. *See United States v. Edge*, 238 F. App'x 366, 369 (10th Cir. 2007); *Young*, 458 F.3d at 1001, 1009; *United States v. Bena*, 2010 WL 1418389, at *2 (N.D. Iowa Apr. 6, 2010), *aff'd* 664 F.3d 1180 (8th Cir. 2011).

Although representation by counsel is not required to meet this standard, representation (or lack thereof) is, nevertheless, a factor that may be considered in our inquiry. Where counsel is present on behalf of the defendant, absent a direct

17

order from the court prohibiting him or her from speaking, counsel would understand that attorneys do not need an explicit invitation to object or speak on behalf of their clients. But where, as here, defendant is not represented by counsel, and there is no evidence in the record indicating that the court invited any comment from the defendant or offered him any opportunity to address the protective order, a reasonable jury could not conclude that the defendant would have understood that he could speak to the court about the order and, therefore, that he had an "opportunity to participate." The evidence of what transpired in the Justice Court does not include any statements made by the unrepresented defendant or any indication to Bramer that he was permitted to object to the entry of the order.

We agree with our sister circuits that an "opportunity to participate" for purposes of the statute does not require representation or participation by counsel, and that the requirement may be "a minimal one." *Young*, 458 F.3d at 1009; *cf. Brody v. Vill. of Port Chester*, 434 F.3d 121, 131 (2d Cir. 2005) (noting that one need not take advantage of an opportunity to participate to satisfy due process). The problem here, however, is that the evidence in the record about the proceeding only allows us to conclude that Bramer attended it, that Bramer was not physically

18

prevented from speaking, and that the judge explained to Bramer the charges against him and what an order of protection was. That is insufficient. In order to prove that Bramer had an "opportunity to participate" under § 922(g)(8)(A), we hold that the government must present sufficient evidence for a jury to be able to conclude that a reasonable person in Bramer's position would have understood that he was permitted to interpose objections or make an argument as to why an order of protection should not be imposed.

On the record before us we cannot conclude that Bramer was afforded that opportunity. In the absence of any additional evidence relevant to this issue, the record demonstrates no more than the judge simply issued the protection order as a matter of course on arraignment day in a "fairly busy" court—a far cry from the set of exchanges found sufficient in *Young*, 458 F. 3d 998, to indicate an opportunity to participate in the proceedings. The court scheduled a second appearance within the next month—one that would presumably be more extensive and would involve considering the merits of continuing the temporary injunction. Where, as here, the government has presented no evidence of anything more than a state proceeding at which Bramer was present and where an order of protection was issued, no rational jury could conclude that Bramer had an "opportunity to

19

participate" in that proceeding. The Justice Court order, therefore, was not proven to be issued after a hearing that comported with the requirements of 18 U.S.C. § 922(g)(8)(A) and proof that Bramer made a false statement in connection with his attempted firearms purchase fails of necessity.

## CONCLUSION

The district court's denial of Bramer's Rule 29 motion for judgment of acquittal is VACATED, and the judgment of conviction is REVERSED.