*United States v. Godiksen*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of February, two thousand twenty-one.

PRESENT:
> DENNIS JACOBS,
> RICHARD J. SULLIVAN,
> STEVEN J. MENASHI,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

> *Appellee,*

> v.                                                                      No. 20-530

JAMES ERIK GODIKSEN,

> *Defendant-Appellant.*

_____

For Appellant:        TRACY HAYES, Assistant Federal Defender, *for* Terence S. Ward, Federal Defender, New Haven, CT.

For Appellee:         RAHUL KALE (Marc H. Silverman, *on the brief*), Assistant United States Attorneys, *for* John H. Durham, United States Attorney for the District of Connecticut, New Haven, CT.

Appeal from the United States District Court for the District of Connecticut (Vanessa L. Bryant, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-Appellant James Erik Godiksen appeals a February 6, 2020 judgment of conviction, entered after a jury trial, for one count of murder-for-hire in violation of 18 U.S.C. § 1958. The district court (Bryant, *J.*) principally sentenced Godiksen to 120 months' imprisonment. On appeal, Godiksen challenges the denial of his motions for a judgment of acquittal and for a new trial, and argues that the district court made several legal errors, each requiring reversal. We assume the parties' familiarity with the underlying facts, procedural history,

and issues on appeal.

## I.    Sufficiency of the evidence

Godiksen challenges the sufficiency of the evidence underlying his conviction in two respects.   First, Godiksen argues that the government failed to prove that he had the specific intent to murder his ex-wife when he used a facility of interstate commerce – his cell phone – as required under the statute.   Second, Godiksen contends that there was insufficient evidence that, in exchange for his ex-wife's murder, he gave or promised something of pecuniary value to the purported hitman, who was actually an undercover agent.   Both arguments lack merit.

This Court "review[s] de novo the sufficiency of evidence and the district court's denial of a Rule 29 motion for judgment of acquittal." *United States v. Bramer*, 956 F.3d 91, 96 (2d Cir. 2020).   "A defendant challenging the sufficiency of the evidence bears a heavy burden because a reviewing court must consider the evidence in the light most favorable to the prosecution and uphold the conviction if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

Sufficient evidence supports the jury's conclusion that Godiksen intended

for his ex-wife to be murdered when he used his cell phone to speak with the undercover agent. The government's theory at trial – that Godiksen ordered the hit on his wife because she wronged him, including financially, in their divorce – was not contrary to the evidence. While Godiksen could, and did, argue that he in fact retained certain assets, including title to his Corvette and his dog, there was ample evidence, including Godiksen's own words, from which the jury could conclude that his actions were motivated by his perception that the divorce settlement was lopsided.

Nor was the jury required to accept Godiksen's assertion that he was intoxicated or suffering from alcohol-related deficits that prevented him from forming the requisite intent for the murder-for-hire. To the contrary, the jury heard testimony from government agents that Godiksen was not intoxicated during the investigation, and even Godiksen's own expert, Dr. Madelon Baranoski, acknowledged that Godiksen's alcohol-related deficits did not prevent him from being able to formulate a plan to commit a crime if desired. This testimony, coupled with the recordings of Godiksen arranging for the murder of his ex-wife, was more than sufficient to establish his intent to commit murder-for-hire.

4

Godiksen fares no better with his contention that the evidence was insufficient to show pecuniary consideration. As relevant to § 1958, the promise of "an unspecified favor," such as "[a]nything [the hired killer] need[s]," cannot support a finding of pecuniary value, unless the record contains some evidence that the parties understood the form the favor would actually take. *United States v. Babilonia*, 854 F.3d 163, 175 (2d Cir. 2017) (first alteration in original) (internal quotation marks omitted). But the record need only be sufficient for the jury to reasonably find that the parties agreed "that the murder would be carried out in exchange for financial compensation" like "money." *Id.* at 176 (explaining that the jury need not "divine the precise nature of th[e] consideration").

The evidence at trial included recordings of Godiksen agreeing to pay the undercover agent $5,000 in exchange for the murder. That figure may have first been suggested by the agent, but Godiksen expressly agreed to the $5,000 as "fine" and "fair," Gov't App'x at 221, and the agent repeatedly confirmed, without objection from Godiksen, that the murder would be committed in exchange for cash. As a result, there was ample evidence from which the jury could find that Godiksen "specifically intended that [the undercover agent] would be paid in exchange for committing the murder." *Babilonia*, 854 F.3d at 177. That he had

5

not yet taken steps to withdraw the promised payment from his account is of no moment.

## II.    Jury instructions

Godiksen next challenges two supplemental jury instructions given at trial. First, he argues that the district court impermissibly lowered the government's burden of proof on intent, because the court incorrectly instructed the jury on the definition of general, not specific, intent.   Second, he contends that the district court conflated mental incapacitation and diminished capacity, confusing the jury. Because Godiksen did not object to either instruction at trial, we review for plain error.   *United States v. Miller*, 116 F.3d 641, 672 (2d Cir. 1997).

It was not plain error for the district court to issue its supplemental instruction in response to a jury note requesting the "dictionary definition" of intent.   Although the district court ultimately gave – without objection – an instruction on general intent from this Court's opinion in *United States v. Bell*, 584 F.3d 478, 484 (2d Cir. 2009), the instruction was provided in addition to, not in lieu of, earlier instructions about specific intent.   Those original instructions expressly provided that the government was required to prove that Godiksen used an interstate facility "with the intent to further or facilitate the commission of

6

murder," thus requiring the jury "to look into the defendant's mind and determine the defendant's purpose in using interstate facilities and in his communications with" the undercover agent. Gov't App'x at 196. In context, we see little room for confusion, particularly since the jury returned a special interrogatory that required it to "unanimously find that the [g]overnment has proved beyond a reasonable doubt that the aforementioned travel or use of the interstate facility was done with the intent that a murder be committed in violation of the laws of any State of the United States." J. App'x at 75.

Godiksen's challenge to the district court's supplemental instruction on diminished capacity is equally unpersuasive. Although it is true that the district court did, at one point, use the term "mentally incapacitated" rather than "diminished capacity," that brief slip did not render the instruction misleading when considered in context. Significantly, the instruction correctly referred to "diminished capacity" until the very end of the instruction, and in any event, the record is clear that Godiksen never attempted to argue a defense of complete incapacity or insanity. *See* No. 3:16-cr-178-VLB, Doc. No. 148 at 5 (defense counsel disclaiming the insanity defense and explaining its diminished capacity defense). Under these circumstances, Godiksen cannot prove plain error that

affected his substantial rights.

### III.    Jury request for playback or readback of testimony

Next, Godiksen argues that the district court denied him a fair trial by improperly responding to a jury note requesting a playback of Dr. Baranoski's cross-examination and "rebuttal." He contends that the district court erred when it failed to read the note into the record, neglected to solicit the parties' responses on the proper course of action, and communicated orally with the jury in open court. Although we agree that the district court erred in conducting an open dialogue with the jury, we find that the error ultimately was harmless.

We have previously articulated a four-step "procedure that a trial judge should normally follow in responding to an inquiry from a jury during the course of jury deliberations." *United States v. Ulloa*, 882 F.2d 41, 42 (2d Cir. 1989). Those steps – referred to as the *Ronder* procedure – require that (1) the jury's questions be submitted in writing; (2) the court mark the question as a court exhibit and read it into the record; (3) the court afford counsel an opportunity to suggest appropriate responses; and (4) the question, if substantive, be read into the record in the jury's presence once the jurors are recalled. *Id.* at 45 (citing *United States v. Ronder*, 639 F.2d 931, 934 (2d Cir. 1981)).

8

Nevertheless, we are "[m]indful that trial judges must be permitted some latitude in determining how best to handle jury inquiries." *Id.* We have thus "accepted substantial compliance with the *Ronder* procedure," examining whether the defendant has suffered prejudice as a prerequisite for reversal. *Id.*; *see also United States v. Leung*, 40 F.3d 577, 584 (2d Cir. 1994) (applying harmless error analysis to court's failure to convey in advance to counsel jury's request for certain transcripts); *United States v. Adeniji*, 31 F.3d 58, 65 (2d Cir. 1994) ("[N]oncompliance with this procedure does not mandate reversal unless prejudice is shown.").

When a jury requests to read or hear trial testimony again, "a court's response to a jury request for a readback should balance the jurors' need to review the evidence before reaching their verdict against the difficulty involved in locating the testimony to be read back, the possibility of undue emphasis on a particular portion of testimony read out of context, and the possibility of undue delay in the trial." *United States v. Criollo*, 962 F.2d 241, 243 (2d Cir. 1992). The decision of whether to play back requested testimony "is within the court's broad discretion." *Id.*

Here, the district court undoubtedly failed to adhere to the *Ronder* procedure when it did not read the jury's note into the record or solicit responses

9

from counsel; the district court then compounded the problem when it engaged in oral colloquies with the jury. But Godiksen fails to show that this caused him any prejudice. To the contrary, the district court made clear to the jury that the redirect was available and asked several times whether the jury was "certain" and "absolutely certain" that it did not want to hear the redirect. Gov't App'x at 205. The jury repeatedly confirmed, including in writing, that it did not. Since the decision to not play back the requested testimony ultimately fell within the district court's broad discretion, Godiksen cannot show prejudice from the district court's departure from *Ronder*. *See United States v. Holmes*, 863 F.2d 4, 6 (2d Cir. 1988).

## IV. Prosecutorial misconduct

Godiksen further contends that certain of the government's statements in its summation and rebuttal summation constituted prosecutorial misconduct that prejudiced Godiksen. We disagree.

"[A] defendant who seeks to overturn his conviction based on alleged prosecutorial misconduct in summation bears a heavy burden," as "[h]e must show more than that a particular summation comment was improper." *United States v. Farhane*, 634 F.3d 127, 167 (2d Cir. 2011) (internal quotation marks omitted). "The law has long recognized that summations" and rebuttal

10

summations "are not detached expositions," so "courts will not lightly infer that every remark is intended to carry its most dangerous meaning." *Id.* (internal quotation marks omitted).

To prevail in requesting a new trial because of summation misconduct, the defendant must show that the alleged misconduct, "when viewed against the entire argument to the jury, and in the context of the entire trial, was so severe and significant as to have substantially prejudiced him, depriving him of a fair trial." *Id.* (internal citations and quotation marks omitted); *see United States v. Rodriguez*, 968 F.2d 130, 142 (2d Cir.1992) (noting that only in a "rare case" will improper summation comments be "so prejudicial" as to warrant new trial (internal quotation marks omitted)). "In assessing whether a defendant has been substantially prejudiced, we consider the severity of the misconduct, the curative measures taken, and the certainty of conviction absent the misconduct." *United States v. Binday*, 804 F.3d 558, 586 (2d Cir. 2015) (internal quotation marks omitted)).

A defendant who, like Godiksen, "did not object at trial to the statements forming the basis of his appeal" faces an even steeper climb, because we apply plain error review. *United States v. Williams*, 690 F.3d 70, 75 (2d Cir. 2012). This

11

plain error standard requires the Court to reject any error that does not "amount to flagrant abuse" that "seriously affects the fairness, integrity, or public reputation of judicial proceedings," in addition to causing the defendant substantial prejudice. *Id.*

Godiksen's myriad claims of error all fail, largely for the reasons discussed by the district court. Godiksen argues that the government disparaged his witness by calling Dr. Baranoski a "hired gun" who was "paid to do what [Godiksen] wanted, just like the undercover." Godiksen's Br. at 48 (quoting Gov't App'x at 171). But the government did not discourage the jury from considering Dr. Baranoski's testimony, pointing out that even she, a defense witness, confirmed that Godiksen could form the intent to commit a crime. Godiksen's other objections to the summation are largely frivolous and amount, at most, to stray remarks that cannot seriously be said to have unfairly prejudiced Godiksen at trial.

## V. New trial

Finally, Godiksen argues that the district court erred in denying his motion for a new trial, given the purported errors he raises. We review the district court's exercise of its broad discretion for abuse, *see United States v. DiTomasso*, 932

12

F.3d 58, 70 (2d Cir. 2019), and find none.

Under Rule 33, a district court may "grant a new trial [to a defendant] if the interest of justice so requires." Fed. R. Crim. P. 33. "Where testimony is patently incredible or defies physical realities, it may be rejected by the court, despite the jury's evaluation." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). Nevertheless, "[w]hile we have held that a district court may grant a new trial if the evidence does not support the verdict, we have emphasized that such action must be done sparingly and in the most extraordinary circumstances." *United States v. Archer*, 977 F.3d 181, 187–88 (2d Cir. 2020) (internal quotation marks omitted).

As noted, any errors in the trial were harmless and not a basis for vacatur. Given this, and because the evidence supports the verdict, we affirm the district court's denial of the Rule 33 motion as a wise exercise of its discretion.

We have considered Godiksen's remaining arguments and find them to be meritless. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

13